# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BUTTE DIVISION

| | |
|---|---|
| BAR K, LLC, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA, et al,<br><br>Defendants. | CV 19-06-BU-BMM<br><br>**ORDER ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. 117).** |

**BACKGROUND.**

Plaintiffs Bar K Ranch, LLC, Michael Walsh, Fred Walsh, and Eileen White (collectively "Plaintiffs") filed an Amended Complaint for declaratory, injunctive, and equitable relief, seeking clarification on several public and private rights-of-way over roads in Madison County, Montana. Doc. 23. Defendant Montana Department of Natural Resources and Conservation ("DNRC") filed a Motion for Partial Summary Judgment. Doc. 117. The Court held a hearing on February 22, 2021. Doc. 167.

**DNRC's ARGUMENT (Doc. 118).**

DNRC asks the Court to declare that no legally cognizable interest exists in S36, T8S, R1W that can be construed as a county right-of-way running north and south along the Lower Road. Doc. 118 at 7. DNRC argues that after Montana took

1

title to S36, T8S, R1W in 1889, Madison County could obtain a county right-of-way in S36, T8S, R1W from the State Land Board only in exchange for full market value of the county right-of-way. *Id*. at 12. DNRC notes that Madison County built the Lower Road through S36, T8S, R1W in approximately 1915 and that the record contains no evidence that Madison County obtained a right-of-way from the State Land Board. *Id*. at 13.

**PLAINTIFFS' RESPONSE (Doc. 158).**

As an initial matter, Plaintiffs argue that DNRC already has stipulated to the status of the Lower Road as a county road. Doc. 158 at 7 (citing Doc. 43 at 5). Plaintiffs also argue that Plaintiffs' claims regarding the status of the Lower Road through S36, T8S, R1W present triable issues. *Id*. at 11. Plaintiffs assert that Montana law no longer requires Madison County to adhere strictly to the legal requirements necessary to establish a county road. *Id*. at 12. Plaintiffs claim the record reflects sufficient intent by Madison County to obtain a right-of-way necessary to establish a county road under the more lenient *Reid/Garrison* doctrine. *Id*. at 12−15.

**LEGAL STANDARD.**

The Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the

outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact proves genuine if there exists sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*. at 248.

**ANALYSIS.**

**Mootness.**

As an initial matter, the Court's order (Doc. 175) denying Plaintiffs' Motion for Partial Summary Judgment (Doc. 80) likely moots DNRC's Motion for Partial Summary Judgment (Doc. 117). The road abandonment proceedings addressed in the Court's order (Doc. 175) included the entire portion of the Lower Road running north and south through S36, T8S, R1W. The current status of the Lower Road through S36, T8W, R1W became irrelevant once Madison County properly abandoned it in 1969. The Court will address, nonetheless, the parties' arguments regarding the creation and status of the Lower Road running north and south through S36, T8W, R1W in case its status becomes disputed during the course of this litigation.

**The Stipulation.**

Plaintiffs argue that DNRC has stipulated already to one or more of the issues being argued in the parties' various motions for partial summary judgment. Doc. 158 at 7−10. Plaintiffs rely on the following stipulation:

> 18. Certain other portions of the 1888 county road encompassing the Lower Road were abandoned over the years, including a portion of the

3

>road on the Bar K Ranch itself in 1964, and another portion, further to the north across the Bar Seven Ranch in approximately 1977.

Doc. 43 at 5.

The Court remains confused as to exactly which issues Plaintiffs believe that the parties have agreed in Stipulation 18. Stipulations 15−17 relate to the 1969 road abandonment proceeding at issue in Plaintiffs' Motion for Partial Summary Judgment (Doc. 80). *Id*. The Court views Stipulation 18 as an acknowledgment between the parties that the 1969 road abandonment proceeding did not constitute the only abandonment proceedings related to the Lower Road.

Plaintiffs appear to argue that Defendants concede that all portions of the Lower Road constitute county roads because Stipulation 18 uses the phrase "the 1888 county road encompassing the Lower Road." Plaintiffs appear to argue, alternatively, that the phrase "the 1888 county road encompassing the Lower Road" indicates that Defendants conceded that the road at issue in DNRC's Motion for Partial Summary Judgment (Doc. 117) was built in 1888 (*i.e.*, before the State took title to S36, T8S, R1W). The Court finds neither argument persuasive.

Factual stipulations represent formal concessions that have the effect of withdrawing a fact from dispute and dispensing wholly with the need for proof of that fact. *Christian Legal Society v. Martinez*, 561 U.S. 661, 677−78 (2019) (internal quotations omitted). Stipulations serve to narrow the scope of a dispute and to relieve the parties of the burden of producing evidence to prove a fact on which

4

everyone already agrees. *Id.* Stipulations are not meant to allow parties to trap other parties through stacked inferences and industrious logical reasoning. Stipulation 18 contains confusing and ambiguous wording. The Court would prefer to allow the parties to withdraw the disputed Stipulation 18 rather than bind a party to such a stipulation.

As of now, the Court views Stipulation 18 as an acknowledgment between the parties that road abandonment proceedings had taken place for at least two portions of the Lower Road other than the 1969 road abandonment proceeding addressed in Plaintiffs' Motion for Partial Summary Judgment (Doc. 80): one on the Bar K Ranch in 1964 and one on the Bar Seven Ranch in 1977. Stipulation 18, as the Court views it, contains no concessions relevant to DNRC's Motion for Partial Summary Judgment (Doc. 117).

**R.S. 2477.**

The Court agrees with DNRC that no county right-of-way was created in S36, T8S, R1W pursuant to R.S. 2477. *See* Doc. 118 at 10−14. As one part of its efforts to encourage settlement of the American West, Congress included in the 1866 Lode Mining Act an open-ended and self-executing offer to provide public rights-of-way for the construction of public highways, commonly known as R.S. 2477, across the public domain. Doc. 94 at 12. R.S. 2477 expressly provides: "[t]he right of way for the construction of highways over public lands, not reserved for public uses, is

5

hereby granted." The public accepted the offer when the public established a public highway across the public domain or across public lands in accordance with the law of the state. *Our Ladies of the Rockies, Inc. v. Peterson*, 181 P.3d 631, 662 (Mont. 2008).

Roads built on lands that previously had been withdrawn from the public domain are not eligible for application of R.S. 2477. *Humboldt County v. U.S.*, 684 F.2d 1276, 1281 (9th Cir.). For example, roads built on National Forest lands, previously removed from the public domain, do not result in a right-of-way under R.S. 2477 because the federal government has reserved those lands for a particular purpose. Doc. 174 at 3.

Under the Act of February 22, 1889 ("the Enabling Act"), ch. 180, 25 Stat. 676 (1889), the federal government granted Montana title to the sixteenth and thirty-sixth sections of each township in Montana "for the support of common schools." *Montanans for Responsible Use of Sch. Trust v. State ex rel. Bd. of Land Comm'rs*, 989 P.2d 800 (Mont. 1999). This transfer of ownership withdrew the sixteenth and thirty-sixth section of each township in Montana from application of R.S. 2477 because the land was reserved "for the support of common schools." R.S. 2477 does not apply, therefore, to roads in S36, T8S, R1W built after Montana took title in 1889. The parties in this case appear to agree, and the record confirms, that Madison County built the portion of the Lower Road running north and south through S36,

T8S, R1W in approximately 1915. R.S. 2477 cannot provide Madison County with a lawful right-of-way. *Humboldt County*, 684 F.2d at 1281.

### The Curative Statute.

The Court also agrees with DNRC that the curative statute cannot provide a basis for establishing a county right-of-way for the portion of the Lower Road running north and south through S36, T8S, R1W. The Montana Legislature first enacted the curative statute as § 2600 of the 1895 Political Code. *Smith v. Russell*, 80 P.3d 431, 434 (Mont. 2003). The curative statute provides as follows:

> All highways, roads, streets, alleys, courts, places and bridges laid out or erected by the public or now traveled or used by the public . . . are public highways.

*See Barnard Realty Co. v. City of Butte*, 136 P. 1064, 1067 (Mont. 1913).

The curative statute seeks to cure procedural irregularities in the establishment of public road rights-of-way. *Id*. The Montana Supreme Court has limited the scope of the curative statute over the years. In *Barnard Realty Co*., the Montana Supreme Court determined that the curative statute applies only to the following: (1) roads established by the public authorities; (2) roads recognized by the public authorities in conjunction with public use; and, (3) roads established through prescription or adverse use. *Id*. (citing *State v. Auchard*, 55 P. 361, 362 (Mont. 1898)). The Land Board, not Madison County, serves as the "public authority" when considering public roads on state trust lands. Art. X, Sec. 4, Mont. Const.

7

The Montana Constitution tasks the Land Board with the administration of Montana trust lands. Art. X, Sec. 11. The Montana Constitution provides:

> **Public land trust, disposition**. (1) *All lands of the state that have been or may be granted by congress*, or acquired by gift or grant or devise from any person or corporation, *shall be public lands of the state*. They shall be held in trust for the people, to be disposed of as hereafter provided, for the respective purposes for which they have been or may be granted, donated or devised.
>
> (2) *No such land or any estate or interest therein shall ever be disposed of except* in pursuance of general laws providing for such disposition, or *until the full market value of the estate or interest disposed of*, to be ascertained in such manner as may be provided by law, *has been paid or safely secured to the state*.
>
> (3) No land which the state holds by grant from the United States which prescribes the manner of disposal and minimum price shall be disposed of except in the manner and for at least the price prescribed without the consent of the United States.

Art. X, Sec. 11, Mont. Const. (emphasis added).

The Montana Constitution mandates clearly that the Land Board shall maintain and administer Montana trust lands in trust for the public, and that no interest in Montana trust lands can be sold, given, or exchanged for anything less than the interest's full market value. *Id*. The Montana Constitution does not provide Madison County with jurisdiction to buy, sell, improve, or alter Montana trust lands without first receiving an interest from the Land Board. *See id*.

As a preliminary matter, Montana trust lands are not subject to prescription or adverse possession. *State ex rel. Galen v. Dist. Court in and for Sanders Cnty*. 112

P. 706, 707 (Mont. 1910). The record further fails to satisfy the other two *Barnard* scenarios. *See Barnard Realty Co.*, 136 P. at 1067. The records contains no indication that the Land Board established, recognized, or knew of the Lower Road running north and south through S36, T8S, R1W. *See Barnard Realty Co.*, 136 P. at 1067. The Land Board apparently knew that Madison County sought to construct a county road through S36, T8S, R1W as Madison County filed an application in approximately 1915 for a public right-of-way across S36, T8S, R1W. The record contains no evidence that Madison County carried its application to completion with the issuance of a right-of-way by the Land Board. It appears instead that Madison County simply abandoned its application and built the road without a right-of-way. Building a road across S36, T8S, R1W without a right-of-way from the Land Board violates the legal requirements set out in the Montana Constitution. Art. X, Sec. 11. Without any recognition or authorization from the Land Board, the public authority tasked with administrating state trust lands, the curative statute cannot serve to remedy this legal defect. *See Barnard Realty Co.*, 136 P. at 1067.

The Court would be more inclined to apply the curative statute in a Montana trust land case where the Land Board had granted a party a right-of-way and, after the party constructed the road, a dispute arose regarding procedural details. These details could include, for example, the route of the road departing from the agreed right-of-way or the value exchanged ultimately differing from fair market value. In

such cases, the public authority (*i.e.*, the Land Board) authorized the right-of-way, but the process by which the road was constructed contained irregularity rather than blatant legal deficiencies.

The Montana Supreme Court has interpreted the curative statute consistently with this understanding, concluding the curative statute served as "a remedial statute, curing irregularities, but *not supplying jurisdiction,* where none was acquired, in the creation of the roads, and as recognizing the existence of highways by prescription when they had been used or traveled by the people generally for the period named in the statues of limitation." *Auchard*, 55 P. 361, 362 (Mont. 1898) (emphasis added).

*Auchard* makes clear that the curative statute, in order to cure procedural irregularities, requires that the road at issue to be built by a party with public authority or jurisdiction to construct the road in the first place. 55 P. 361, 361 (Mont. 1898). At a minimum, the curative statute requires the public authority, in conjunction with public use, to recognize the road at issue. *Barnard Realty Co. v. City of Butte*, 136 P. at 1067. The Land Board represents the public authority with the ability to recognize a road in state trust lands. Art. X, Sec. 4, Mont. Const. The curative statute cannot serve to "supply jurisdiction" when a party otherwise would be without legal authority to construct a road. *Id.*

In this case, the curative statute does not allow the Court to ignore a clear constitutional mandate that Madison County first obtain a right-of-way in S36, T8S, R1W from the Land Board before constructing the county road. *Auchard* makes clear that one cannot simply build roads wherever one chooses and then rely on the curative statute later to remedy any legal or jurisdictional defects. The curative statute cures procedural defects. *Barnard*, 136 P. at 1067. The curative statute does not supply jurisdiction. *Auchard*, 55 P. at 361. Ultimately, Madison County lacked any legal authority to build a road through S36, T8S, R1W. As a result, the curative statute cannot provide a basis for establishing a county right-of-way for the portion of the Lower Road running north and South over S36, T8S, R1W.

**Equitable Estoppel.**

Plaintiffs argue that the doctrine of equitable estoppel should defeat DNRC's Motion for Partial Summary Judgment. Doc. 158 at 19−26. The Court disagrees. The Montana Supreme Court has made clear that it would look with disfavor upon the application of the doctrine of equitable estoppel to governmental entities. *Chennault v. Sager*, 610 P.2d 173, 176 (Mont. 1980). Courts should apply the doctrine only in exceptional circumstances or in cases of manifest injustice. *Id*. This reluctance to apply equitable estoppel to government entities arise from public policy considerations. *Id*. at 175−76. These public policy considerations include the burden that application of the doctrine would levy on the State to monitor closely

all the remote public lands over which the State possesses an interest. The State maintains millions of acres of public lands and thousands of miles of public roads.

Nothing in the record amounts to "exceptional circumstances" or a "manifest injustice." *See Chennault*, 610 P.2d at 176. Madison County knew the constitutional requirements to obtain a county right-of-way through S36, T8S, R1W. In fact, Madison County submitted in an application to the State Land Board in 1914-1915 for an interest in S36, T8S, R1W. Doc. 158 at 16. The record does not make clear why exactly Madison County failed to carry its application to fruition. The record does indicate that, sometime after Madison County initiated its application, Madison County went ahead nonetheless and constructed a road running north and south through S36, T8S, R1W. The only exceptional circumstance in the record is that Madison County constructed a road in apparent disregard to known constitutional and legal requirements. The fact that Madison County deprived the public for decades of the full market value of its intrusion onto S36, T8S, R1W appears to be the only manifest injustice in the record.

**CONCLUSION.**

The record contains undisputed material facts sufficient to grant summary judgment in favor of DNRC. *See* Fed. R. Civ. P 56(a). Madison County possesses no legally cognizable interest that can be construed as a county right-of-way along the portion of the Lower Road running north and south through S36, T8S, R1W.

R.S. 2477 does not operate to provide such a right-of-way because the State took title of S36, T8S, R1W in 18889 before Madison County constructed the Lower Road through S36, T8S, R1W after 1915. The curative statute also does not operate to provide such a right-of-way because it cannot supersede the constitutional requirement that the State receive full market value for any interest in S36, T8S, R1W. Madison County did not provide full market value for a right-of-way for the Lower Road running north-south through S36, T8S, R1W.

**IT IS HEREBY ORDERED THAT**:

1. DNRC's Motion for Partial Summary Judgment (Doc. 117) is **GRANTED**.
2. There exists no cognizable county right-of-way running north and south through S36, T8S, R1W.

Dated the 23rd day of July, 2021.

_____
Brian Morris, Chief District Judge
United States District Court