# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BUTTE DIVISION

| | |
|---|---|
| BAR K, LLC, et al., | CV 19-06-BU-BMM |
| Plaintiffs, | |
| vs. | ORDER |
| UNITED STATES OF AMERICA, et al, | |
| Defendants. | |

**BACKGROUND.**

Plaintiffs Bar K Ranch, LLC, Michael Walsh, Fred Walsh, and Eileen White (collectively "Plaintiffs") filed an Amended Complaint for declaratory, injunctive, and equitable relief, seeking clarification on several public and private rights-of-way. Doc. 23. Defendant United States filed a Motion for Summary Judgment. Doc. 91. Bar K filed a Motion for Summary Judgment. Doc. 111. The Court construes the two motions as cross-motions. The parties' cross-motions concern a system of disputed roads in Madison County, Montana, including the entire Lower Road, and portions of both the South Upper Road and the Lower Bobcat Road. *See* Doc. 112 at 14. The Court held a hearing on February 22, 2021. Doc. 167.

1

**PRIOR COURT DECISIONS.**

The Court resolved the status of the Lower Road in Section 36 of T8S, R1W. Doc. 179. The Court resolved the status of the Lower Road in Sections 1 and 12 of T9S, R1W. Doc. 178. The Court resolved the status of the South Upper Road crossing federal lands in Sections 27 and 35 of T9S, R1W. Doc. 174. The parties' cross-motions as they relate to those sections are denied as moot.

The Court previously rejected Plaintiffs' argument regarding Stipulation 18. Doc. 179 at 3. The Court determined that, rather than forcing a contested interpretation on the parties, the Court prefers to allow the parties to withdraw Stipulation 18. *Id*. at 5. The Court need not address again that issue here.

The remaining aspects of parties' cross motions concern the following two categories: (1) those portions of road crossing federal lands, including the Lower Road in Sections 12, 13, and 14 of T9S, R1W; and (2) those portions of road crossing state lands, including the Lower Road in Sections 14 and 23 of T9S, R1W and the South Upper Road in Sections 22, 23, 26, 27, and 35 of T9S, R1W.

**LEGAL STANDARD.**

The Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A

dispute as to a material fact proves genuine if there exists sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*.

**ANALYSIS.**

**(1) Portions of Disputed Road Crossing Federal Lands.**

    **(a) BLM's Argument.**

BLM argues first that the twelve-year statute of limitations in the Quiet Title Act bars Plaintiffs' claims under the Quiet Title Act. Doc. 112 at 15. BLM asserts that Plaintiffs knew or should have known the United States claims after the federal government had taken explicit and public steps over the last forty years that demonstrated the United States's exclusive control over the disputed roads. *Id*.

BLM argues second that Plaintiffs lack standing to asserts claims on behalf of the public or Madison County. Doc. 112 at 22. BLM claims that the Quiet Title Act requires a plaintiff to set forth with particularity the nature of the interest that the plaintiff claims in the real property. *Id*. at 23. Plaintiffs cannot make a claim for a road easement on behalf of the public or Madison County based on the fact that Plaintiffs lack any interest in a county road easement. *Id*.

BLM argues third that Plaintiffs cannot make out claims under R.S. 2477 or for private prescriptive easements. *Id*. at 26. BLM contends that the record demonstrates that the relevant federal lands were reserved from the operation of

R.S. 2477 before the roads came into existence. *Id*. R.S. 2477 cannot create a public road over these lands. *Id*.

**(b) Plaintiffs' Argument.**

Plaintiffs argue first that BLM's statute-of-limitations argument remains unsuitable for resolution on summary judgment. Doc. 154 at 13−14. Plaintiffs assert that questions of "what was known, or should have been known, and when," are fact-bound questions that the Court should not resolve on summary judgment. *Id*. at 14. Plaintiffs claim, moreover, that the United States's conduct prevented Plaintiffs' cause of action from accruing. *Id*. at 23. Plaintiffs argue, in the alternative, that Plaintiffs did not and could not have known that the government claimed exclusive control over the disputed road system. *Id*. at 18.

Plaintiffs argue second that they maintain standing to bring this suit. Doc. 154 at 26. Plaintiffs characterize BLM's standing argument as an attempt to reconsider the Court's earlier determination that prudential standing serves as no jurisdictional bar to Plaintiffs' claims. *Id*.

Plaintiffs argue third that Madison County established the disputed roads as county or public roads under R.S. 2477. Doc. 94 at 12. Plaintiffs reject BLM's argument that the relevant federal lands were withdrawn from the application of R.S. 2477. *Id*. Plaintiffs argue, in the alternative, that the question of whether the

4

lands were withdrawn remains unsuitable for resolution on summary judgment. Doc. 154 at 37.

**ANALYSIS.**

**(1) The Statute of Limitations under the Quiet Title Act.**

"Under the Quiet Title Act, the United States . . . has waived its sovereign immunity and has permitted plaintiffs to name it as a party defendant in civil actions to adjudicate title disputes involving real property in which the United States claims an interest." *Block v. North Dakota ex rel. Rd. of University and School Lands*, 461 U.S. 273, 275 (1983). The Quiet Title Act contains a twelve-year statute of limitations. 28 U.S.C. § 2409(a)(g). This statute of limitations constitutes an express condition on which the United States's waiver of sovereign immunity rests. *Block*, 461 U.S. at 287; *U.S. v. Mottaz*, 476 U.S. 834 (1986). Sovereign immunity bars Quiet Title Act claims commenced more than twelve years after "plaintiff or his predecessor in interest knew or should have known of the claim of the United States." *Mottaz*, 476 U.S. at 843.

The statutory term "should have known" imparts a test of reasonableness. *Shultz v. Dep't of Army*, 886 F.2d 1157, 1160 (9th Cir. 1989). The test asks whether the United States's actions would have alerted a reasonable landowner that the United States claimed an interest in the real property. In the case of an easement, the question becomes whether the United States's actions would have alerted a

reasonable landowner that the United States claimed the exclusive right to deny the landowner's his or her historic access. *McFarland v. Norton*, 425 F.3d 724, 727 (9th Cir. 2005).

BLM's statute of limitations argument hinges, therefore, on whether the United States's actions would have alerted a reasonable landowner that the United States claimed the exclusive right to deny his or her historic access over the disputed road system. *See id*. BLM argues that the record demonstrates sufficient road closures, sign postings, and public comment related to the disputed road system to answer this question in the affirmative. Doc. 112 at 16–26. The Court agrees.

BLM instituted road closures on portions of the dispute road system in the early 1980s when concerns arose about dwindling elk populations. Doc. 113 at 95–96. BLM solicited public input, held public meetings, and published notices in local newspapers and the Federal Register. *Id*. at 94. BLM and other state government agencies installed road signs indicating the closures. *Id*. The signs stated, in effect: "Road Closed to All Motorized Vehicles from Dec. 2 Thru May 15." *Id*. at 97. FWP, in conjunction with other agencies, erected barricades at the onset of each closure. *Id*. BLM published maps as early as 1984 to notify the public of these travel restrictions. *Id*. at 98.

BLM prepared a Resource Management Plan ("RMP") and an Environmental Impact Statement ("EIS") in 2001. *Id*. at 104. BLM published a notice in the Federal

Register that a draft of the RMP and EIS were available for public comment. *Id*. The RMP provided that BLM sought to continue implementing the road closures on the Lower Road first implemented in the 1980s. *Id*. BLM published a notice again in 2006 when it finalized a new RMP. *Id*. at 106. BLM held public meetings at the Madison County Commissioners' Office. *Id*. This amount of public notice and comment proves sufficient to provide a reasonable landowner with notice that the United States claimed a right to the disputed roads.

The nature of these closures demonstrates that the right the United States claimed to the disputed road constitutes an *exclusive right*. The government's closures appear to represent an absolute exclusion of all others. Some closures throughout Montana allow for exceptions to authorized users. *See id*. (*e.g.*, Bad Luck Creek). The signs and EIS state clearly that the Lower Road was closed to all motorized vehicles. Doc. 115-48 at 7. The closures in this case do not allow for exceptions, except for possibly those users who obtain a permit from BLM. Such an exhibition of exclusive control over the Lower Road proves sufficient to notify a reasonable landowner that the government maintains exclusive control over the disputed roads. *See McFarland*, 425 F.3d at 727.

Plaintiffs argue that seasonal travel restrictions and other "generally applicable regulations[s]" that restrict road use do not signal exclusive control. Doc. 154 at 16 (citing *McFarland*, 425 F.3d at 727−28). Plaintiffs also argue that

the installation of physical barriers, gates, or locks does not signal sufficient exclusive control unless coupled with an actual denial of access. Doc. 154 at 17 (citing *McFarland*, 425 F.3d at 727).

The plaintiff in *McFarland* owned real property within the exterior boundaries of Glacier National Park. 425 F.3d at 725. The plaintiff accessed his property via Glacier Route 7. *Id*. Local residents, including the plaintiff, plowed Glacier Route 7 in the winter to ensure access to their properties. *Id*.

The National Park Service ("NPS") banned snowmobiling within Glacier National Park in 1975, including along Glacier Route 7. *Id*. NPS eventually closed entirely Glacier Route 7 to the public during the winter. *Id*. NPS began erecting wooden barricades and installing cable locks to enforce the closures. *Id*. NPS historically provided keys to local residents and allowed the local residents to bypass the barricades, even during the winter closures.

The local resident enjoyed access along Glacier Route 7 until, in 1999, NPS changed its position and determined that "no one will drive park roads once they are closed to the public." *Id*. at 726. NPS then barred local residents from using Glacier Route 7 during the winter closures. The plaintiff filed suit under the Quiet Title Act to quiet title to an easement over Glacier Route 7. *Id*.

The Ninth Circuit determined that the ban on snowmobiles within the exterior boundaries of Glacier National Park did not constitute notice of exclusive control.

8

*Id*. at 727. This ban constitutes a generally applicable regulation that did not affect the plaintiff's access along Glacier Route 7. In other words, the plaintiff reasonably could expect NPS to exhibit some amount of control (but less than exclusive control) over certain aspects of Glacier National Park, for example, regulating snowmobiling access. *Id*. The notice requirement was not satisfied until the level of control expanded to suggest exclusive control over the road. *Id*. Banning snowmobiling demonstrates regulatory power, not exclusive control. *Id*.

Consistent with this understanding, the Ninth Circuit also determined that installation of barriers, cables with locks, and later gates with locks did not convey sufficient notice of exclusive control because the Park Service never barred the plaintiff's access to Glacier Route 7. Physical barriers cannot, by themselves, connote to a private party a level of *exclusive* control when that private party maintains the freedom to bypass such barriers whenever that private party wishes. The Ninth Circuit then concluded, as Plaintiffs cite, that physical barriers do not signal exclusive control unless coupled with an actual denial of access. *Id*.

The road closures at issue in this case, unlike those road closures in *McFarland*, are coupled with an actual denial of access sufficient to signal the United States's exclusive control over the disputed roads. The *McFarland* closures barred members of the public from using Glacier Route 7, but provided exceptions for local residents who required access over Glacier Route 7 to access their real

9

property. The road closures at issue in this case, conversely, barred access to everyone. They barred both the public and local landowners. The closures did not provided exceptions for any individuals such that a reasonable landowner might consider the closures to be a symptom of a level of control on behalf of the United States consistent with some control less than exclusive control. The closures constitute a denial of access to the disputed road system. *McFarland*, 425 F.3d at 727

The record leaves the Court with the firm conviction that Plaintiffs knew or should have known since the 1980s that the United States claimed a right of exclusive control over the disputed road system. *See Mottaz*, 476 U.S. at 843. Plaintiffs' claims under the Quiet Title Act fall outside the twelve-year statute of limitations. *See* 28 U.S.C. § 2409(a)(g). The statute of limitations under the Quiet Title Act bars Plaintiffs claims under the Quiet Title Act. *Block*, 461 U.S. at 287. BLM's Motion for Summary Judgment (Doc. 111) is granted. Plaintiffs claims under the Quiet Title Act are dismissed with prejudice.

**(2) Portions Crossing State Lands.**

The Court's dismissal of Plaintiffs' claims under the Quiet Title Act changes greatly the posture of this lawsuit. Plaintiffs no longer maintain any claims under federal law, and Plaintiffs no longer maintain any claims against federal defendants. The question remains whether the Court possesses discretion under § 1367 in

deciding whether to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims. *San Pedro Hotel Co., Inc. v. City of Los Angeles*, 159 F.3d 470, 478 (9th Cir. 1998).

The federal supplemental jurisdiction statute provides the following:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.

28 U.S.C. § 1367(a).

The Court must exercise supplemental jurisdiction unless prohibited by § 1367(b), or unless one of the exceptions in § 1367(c) applies, in which case the Court maintains discretion. The exceptions in § 1367(c) include the following:

> (1) the claim raises a novel or complex issue of State law;
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;
> (3) the district court has dismissed all claims over which it has original jurisdiction; or,
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

The underlying inquiry in deciding whether to exercise supplemental jurisdiction under § 1367 requires the Court to consider judicial economy, convenience and fairness to the litigants, and comity to the state courts. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966). When declining to exercise supplemental jurisdiction under § 1367(c)(1)-(3), the Court need not state its reasons for dismissal. *San Pedro Hotel*, 159 F.3d at 478. Only under § 1367(c)(4) must the

11

Court articulate "why the circumstances of the case are exceptional" and expressly consider the factors laid out in *Gibbs*, 383 U.S. 715 (1966). *San Pedro Hotel*, 159 F.3d at 478.

The Court has sought in this lawsuit to resolve both the federal-law issues, and those state-law issues that affected federal defendants and on which the Court maintained clear state law precedent. The Court's recent summary judgment rulings have narrowed this case. This case now represents a dispute between Plaintiffs and various state agencies over a disputed road system within Madison County, Montana.

The only remaining state-law issues involve either novel issues (*e.g.*, whether a private plaintiff can bring a suit on behalf of a county regarding a county road within that county), issues political in nature (*e.g.*, whether a private plaintiff can litigate the level of road maintenance that a county must perform), or issues that strongly affects state public policy (*e.g.*, possible construction and redirection of roads through wildlife management areas). These issues remain better suited for resolution by a state district court and the Montana Supreme Court. The Court declines to exercise supplemental jurisdiction over this case. *See Gibbs*, 383 U.S. 715 (1966); *San Pedro Hotel*, 159 F.3d at 478.

**IT IS HEREBY ORDERED THAT**:

1. BLM's Motion for Summary Judgment (Doc. 111) is **GRANTED**.

2. Plaintiffs' claims under the Quiet Title Act are **DISMISSED**.

3. The Court declines to exercise supplemental jurisdiction over the remaining state law claims; The remaining state law claims are **DISMISSED** without prejudice.

4. The Clerk of Court shall close this matter.

Dated the 19th day of August, 2021.

_____
Brian Morris, Chief District Judge
United States District Court